IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff | : | |
| v. | : | Criminal Action No. 24-97-RGA |
| | : | |
| MICHAEL ANTHONY KEALTY, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' SENTENCING MEMORANDUM[1]

Michael Kealty ("Defendant") was a sworn officer with the Smyrna Police Department for approximately six years. His most recent rank was "Detective." As a detective, he worked every type of case, from white collar crime to shootings, to "special victims" cases involving sexual offenses against children and adults. As a detective, Defendant was sworn to protect the community and bring perpetrators of heinous crime to justice. Instead, he became a perpetrator himself, betraying his oath, his badge, and his community by exploiting the very people he was sworn to protect.

Since at least 2021, Defendant sexually exploited, and attempted to sexually exploit, multiple children. With respect to the identified victim in this case, Defendant groomed her online for approximately six months, ultimately persuading her to produce child sexual abuse material for his benefit. The victim told law enforcement that at one point, Defendant threatened to leak her images to the public if she did not continue to produce for him.

---

[1] As it does in every case, the United States has filed sealed Attachment A to this Memorandum.

1

The uncontested sentencing guidelines range is 120-135 months. Given the heinous nature and circumstances of this offense; the need for the sentence to reflect the seriousness of the offense, send a strong message, and promote respect for the law; and the need for just punishment, this case warrants a top-end guideline sentence. Imposing a sentence of 135 months—the very top of the guidelines—is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

## I.    BACKGROUND OF THE CASE

This investigation arose from a CyberTip submitted by Snapchat to the National Center for Missing and Exploited Children. (*See* Amended Presentence Investigation Report (hereinafter, "PSR") ¶ 17). Snapchat reported that user "jasonkyle221" was in possession of an image deemed to be child sexual abuse material ("CSAM"). (*Id.* at ¶ 18). The tip was forwarded to the Federal Bureau of Investigation ("FBI") on or about September 18, 2023, and agents confirmed that the image depicts CSAM. (*Id.* at ¶ 17-18). In the report, Snapchat provided various identifiers for "jasonkyle221," including the IP address associated with the account/suspect transaction. (*Id.* at ¶ 19). The FBI confirmed that the IP address is subscribed to Defendant at his residential address, and also to his phone number. (*Id.*)

The FBI obtained a search warrant for the "jasonkyle221" Snapchat account. (*Id.* at ¶ 25). In terms of identification—in addition to the IP address that comes back to Defendant's residence—there were various selfies of the user in the account. (*Id.*). The individual in these selfies was Defendant. (*Id.*). In terms of content, the FBI confirmed the presence of CSAM in the account. (*Id.* at ¶ 25).

First, law enforcement confirmed the presence in the account of the CSAM file that was the basis for the August 2023 CyberTip ("CSAM Image 1"). (*Id.*). That image depicts a clothed,

2

prepubescent female performing oral sex on an adult male. (*Id.* at ¶ 18). Second, law enforcement observed an exchange between Defendant and another user wherein Defendant sent a different CSAM image to said user ("CSAM Image 2"). (*Id.* at ¶ 26). That image depicts a prepubescent female lying face down across a male's lap. The girl is completely nude, except for American flag socks on her feet. The male, who is also nude, is spreading the girl's vagina open with his fingers. (*Id.*). In sending the picture, Defendant asks the user, "You good with these kinds pics," to which the user replies, "What you think. We into the same shit," to which Defendant says, "Haha just making sure." (*Id.*).

In addition to CSAM Image 1 and CSAM Image 2, the Snapchat account contains various conversations between Defendant and other adult users wherein Defendant expresses his sexual interest in 14–16-year-old girls. (*Id.* at ¶ 27). One example is below, in a conversation with a Snapchat user between October and November 2022 (*id.*):

> **Jasonkyle221:** Weird question How yng is too yng for you? Like how young are you into?
> **Kisan_Patel:** I mean the youngest I've fucked is 17 and I was 24
> **Kisan_Patel:** Why what about you?
> **Kisan_Patel:** I wouldn't judge
> **Kisan_Patel:** Do you have a younger kink? I'm so interested in this
> **Jasonkyle221:** Yes I do. And I'm working a high school football game as OT was going to see if ya wanted me to try and sneak ya some pics lol [2]
> **Jasonkyle221:** Won't be nothing crazy but maybe some cute asses
> **Jasonkyle221:** I def have a ynger kink. Prob like 14
> **Kisan_Patel:** Yes please!
> **Kisan_Patel:** Fuck have you ever had a slutty highschool girl
> **Kisan_Patel:** Or perved or touched on one?
> **Jasonkyle221:** No. I 100% flirt these girls are such flirts and I'm not an ugly dude and not too old so I def think I could get a few but it's so so so risky!!! I would fucking destroy some teen ass!!
> **Kisan_Patel:** God I'd love to do that too

---

[2] The Smyrna Police Department has confirmed that Defendant did, in fact, routinely work special assignments at high school football games.

> **Jasonkyle221:** Imma bad person I know it.
> **Kisan_Patel:** I sometimes go to the Asian massage parlors and try to get some womanly touch
> **Kisan_Patel:** I don't think you're a bad person I just think you are a sexual person and that's okay because I am too
> **Jasonkyle221:** Hahahaha yea just feel like a bad person cause they are yng. But I can't help it!! So tiny and tight!! Fresh wet pussy!! Briken open with my big hard cock!

The Snapchat account also shows that Defendant engaged in conversations with various minor girls. One example of a conversation with a 16-year-old is below. (*Id.* at ¶ 29). This is the identified victim in this case. The conversations took place from April 2021 to October 2021. Below are snippets from the conversation, not the full conversation:

> **Jasonkyle221:** Haha yea. Luke is what we call a bi-cuck.... you have any idea what that is? How old are you?
> **Victim:** Yeah he told me all about that. I'm 16
> **Jasonkyle221:** Oh wow, you're a yng one.... usually when girls are your age.... they aren't always up for the "weird" stuff lol
> **Victim:** Wdym?
> **Jasonkyle221:** Would you be down with having him watch me fuck you while he is in the corner of the room jerking his little cock
> **Victim:** Idk
> **Jasonkyle221:** Wel [sic] guess first time for everything.... or you're an innocent one lol
> **Victim:** Yeah I'm innocent
> **Jasonkyle221:** Never done anything?
> **Victim:** Basically
>
> **[The conversation continues.]**
>
> **Jasonkyle221:** Well you can for sure. Now show off that teen body and help me cum
> **Victim:** I don't know.
> **Jasonkyle221:** Just try it
> **Jasonkyle221:** I know I'll like it
>
> **[The conversation continues.]**
>
> **Jasonkyle221:** Well I'm nit [sic] trying to be rude.... but I'm kinda horny.... and wanna JO, snd [sic] you are nit [sic] into that stuff, which is fine!! So I don't wanna be annoying and shit to ya.
> **Victim:** Your not annoying. I'm not into that cuz I don't really know you

**Jasonkyle221:** Well I mean.... that's what makes it most fun.... not knowing each other... we have our fun and go separate ways

**[The conversation continues.]**
**Jasonkyle221:** Didn't like the pic
**Victim:** It's not that
**Jasonkyle221:** Just try if ya don't like it we will stop
**Victim:** I'm just not comfortable with my body my self [sic] let alone showing someone else
**Jasonkyl221:** Then show me some pics of friends or your sister or someone since you don't want me to cum to pics of you like I want to

**[The conversation continues.]**

**Victim:** I'm a virgin
**Jasonkyle221:** Mmmm where you live I'll come change thst [sic]
**Victim:** Hmmmm I don't know
**Jasonkyle221:** You'd enjoy it¦. I'm telling ya!
**Jasonkyle221:** Why don't ya go take me a sexy pic inside real quick get my cum moving for your cute teen body
**Victim:** I'm busy tho
**Jasonkyle221:** Just real quick! Then we can chat more later
**Victim:** I don't know. I got three minutes and I don't even know what to do
**Jasonkyke221:** Just take your shirt off and show off those perky teen tits for me. And give me a cute smile
**Jasonkyle221:** Just like your story pic just showing me that cute body

**[The conversation continues.]**

**Jasonkyle221:** Your virgin? So you prob are so tight
**Victim:** Maybe idek
**Jasonkyle221:** Well let's see!! Spread those legs and show off that tight little pussy. I would stretch it out with my cock
**Victim:** I'm busy
**Jasonkyle221**: Ohhh damn!!! Well I appreciate you showing off like you did!! You ever suck a cock?
**Victim:** No
**Jasonkyle221:** You want to? Where ya from
**Victim:** Idek and Ohio
**Jasonkyle221:** Where in Ohio I'm close
**Victim:** I go between areas
**Jasonkyle221:** Ohh ok close to PA
**Jasonkyle221:** ?
**Victim:** I'm more toward cincy

5

**Jasonkyle221:** Ohh ok gotcha
**Victim:** Yea
**Jasonkyle221:** Would ya want meet?
**Victim:** I don't know
**Jasonkyle221:** Well I'd like to experience you!! And your virgin holes

[The conversation continues.]

**Jasonkyle221:** What kinda panties you have on

[The conversation continues.]

**Jasonkyle221:** That's ok just take them off totally daddy wants you to bend over fit [sic] him
**Victim:** I bet daddy does
**Jasonkyle221:** Mmmm keep making me happy! Be daddy's little slut
**Victim:** Anything for you daddy
**Jasonkyle221:** Mmm good girl if you need to make it a vid go ahead

[The conversation continues.]

**Jasonkyle221:** You going to make daddy that vid
**Victim:** I can't my dad is up
**Jasonkyle221:** Damn!!! Well spread your legs daddy wants to see that tight pussy!! Then you can go to sleep ok
**Victim:** Ok

[The conversation continues.]

**Jasonkyle221:** Good girl
**Jasonkyle221:** Mmmm perfect!!!!
**Jasonkyle221:** You're so ducking right
**Jasonkyle221:** Tight
**Jasonkyle221:** You ever have anything inside you?
**Victim:** Nope
**Jasonkyle221:** Even your fingers??
**Victim:** Nope never
**Jasonkyle221:** I know you have to go to bed but maybe tomorrow you finger that virgin hole for daddy to watch
**Victim:** Yes tomorrow
**Jasonkyle221:** Mmmm perfect!! Good job tonight. You're being a great little slut for daddy
**Victim:** Thank you daddy
**Jasonkyle221:** You don't tell anyone right?

>**Victim:** No ofc night between you and me
>**Jasonkyle221:** Good girl keep it that way night

Per the victim, at some point in their conversations, Defendant began threatening to release her sexual images to the public if she did not continue to produce for him. (*Id.* at ¶ 32). The victim blocked him.

Defendant was charged via Complaint on October 13, 2023, with Distribution and Possession of Child Sexual Abuse Material. He was ordered detained the same day. On October 15, 2024, Defendant pleaded guilty to one count of Coercion/Enticement of a Minor and admitted to the entirety of the aforementioned conduct. He now faces sentencing.

II.     **THIS CASE WARRANTS A TOP-END SENTENCE OF 135 MONTHS**

   A.  <u>Nature and Circumstances of the Offense and The Need for the Sentence to Reflect the Seriousness of the Offense</u>

Defendant's conduct is among the gravest of crimes, and therefore deserves a grave sentence. The aforementioned conduct is just a fraction of the content discovered in Defendant's Snapchat account. He spoke with multiple minors, one of whom was a 13-year-old girl he attempted to persuade to send naked pictures of herself. She refused. The account contains other images of naked or scantily clad girls, however, that were unable to be identified. The point: Defendant's conduct extends far beyond the one count of coercion he is charged with. A sentence of 135 months is, therefore, not greater than necessary to adequately address Defendant's heinous actions.

   B.  <u>History and Characteristics of Defendant</u>

Defendant's history can be viewed in two ways. One can look at his years of military/law enforcement service and his strong family background and decide this person deserves some sort

of a "break" for all the good he has done. That is no doubt how the defense will ask this Court to view Defendant's history—as a mitigating factor.

The government submits, however, that the Court should view Defendant's history in the second way: as the aggravating factor it is. While public service is normally a mitigating factor for a defendant, in this case, it is aggravating. *See United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000) ("A Defendant's status as a law enforcement officer is often times more akin to an aggravating as opposed to a mitigating [ ] factor, as criminal conduct by a police officer constitutes an abuse of a public position."); *see also United States v. George*, No. 19-4841, 2021 WL 5505404, at *6 (4th Cir. Nov. 24, 2021) (quoting *Thames* in remanding George's case for re-sentencing after court placed too much mitigative impact on George's career as a police officer). Defendant's actions are a detestable abuse of the public trust. In the most egregious way, he violated the very law he was sworn to uphold. There is nothing mitigating about that.

In an attempt to provide insight into his actions, Defendant may seek to offer evidence of the trauma he endured while serving in the military and as a police officer. The government does not dispute any of the struggles Defendant was going through at the time. The fact remains, however, that he put himself in those situations. He chose his career paths. The victim he coerced—and the children he enjoyed watching get sexually abused—either did not have the capacity to make a choice, or did not have a choice at all. While the government recognizes Defendant's own plight, his plight stemmed from his own choices.

Moreover, the repeated nature of Defendant's conduct—going back to at least 2021—shows that the victimization of Victim 1 was not a momentary lapse in judgment; rather, it was reflective of his character. Defendant even acknowledged in his chat with "Kisan_Patel" that he knows it is wrong to sexualize children, but he cannot help it because their "pussy" is just so "tight"

8

and "wet." He knew what he was doing. He knew it was wrong (he was, after all, a police officer accustomed to investigating sex crimes against children). Nevertheless, he continued to engage in this criminal behavior. The community expects a higher standard of conduct from its public officials. This Court should sentence Defendant accordingly to the top of the guidelines range.

    C. <u>The Need for the Sentence to Send a Strong Message, Promote Respect for the Law, and Provide Just Punishment</u>

A top-end guideline sentence reflects the seriousness of the offense, sends the proper message, and provides just punishment for the egregious nature of this case. The seriousness of the offense was emphasized in the preceding sections. What the government wants to emphasize here is the need for the sentence to provide adequate deterrence and promote respect for the law.

Title 18, United States Code, Section 3553(a)(2)(B) requires that the Court consider the factor of deterrence when fashioning a sentence. Deterrence is two-fold: specific deterrence is aimed at the individual; general deterrence is aimed at the public. Thus, the sentence must send the proper message to the public.

There is a harrowing epidemic of police officers abusing children. In 2024, the Washington Post investigated this phenomenon and found that "over the past two decades, hundreds of law enforcement officers in the United States have sexually abused children while officials at every level of the criminal justice system have failed to protect kids, punish abusers and prevent additional crimes."[3] The Post further found that these officers "most often targeted teenage girls" who were "vulnerable in some way," and that "99 percent of arrested officers were male. Two-

---

[3] Contrera, et al., *Abused by the Badge: Hundreds of police have sexually abused kids. How do they avoid prison time?*, THE WASHINGTON POST, June 12, 2024, https://www.washingtonpost.com/investigations/interactive/2024/police-officers-child-sexual-abuse-in-america/. (**PDF of article attached as Exhibit 1 for convenience**).

thirds had worked in law enforcement for more than five years."[4] Defendant falls right into that category.

When police officers commit atrocities in their own communities, it erodes trust in the justice system. It matters not whether the acts were committed while the officer was off duty. As one police chief noted, "We have to be able to maintain the trust of the public. People see us as law enforcement regardless of whether we're on duty or off duty."[5] Without the community's trust, the justice system crumbles. Michael Kealty violated the trust of his community and in so doing, contributed to the erosion of trust in the criminal justice system. Thankfully, unlike some of the other cases throughout the country, Defendant will serve a significant sentence in this case no matter what. The government highlights the Post investigation merely to show that this case fits into a larger narrative, and to show that society has a vested interest in seeing justice served.

In this case, the proper message is a strong message: That no one is above the law and that the community can have faith in its justice system. A justice system that refuses to let criminals hide behind a badge. A justice system that says regardless of one's uniform, if you violate the law, you will be judged accordingly, and often times, more harshly.

### III.    CONCLUSION

Unlike the vast majority of defendants who come before this Court, Michael Kealty had everything: a stable career; loving parents; a loving wife; a newborn son; and a home. And instead of cherishing these things and being grateful for his fortune in life, he took to the Internet to unleash his frustrations with life on young girls. Defendant's predatory behavior toward young, innocent

---

[4] Contrera, et al., *Abused by the Badge: How The Post investigated police officers accused of sexually abusing kids*, THE WASHINGTON POST, Dec. 18, 2024, https://www.washingtonpost.com/dc-md-va/2024/03/14/police-child-sex-abuse-how-we-reported (**PDF of article attached as Exhibit 2 for convenience**).

[5] Contrera, et al., *supra* note 3.

girls—while wearing a badge that signified his duty to protect and serve the community—is abhorrent. And for that behavior, he deserves the highest sentence the guidelines recommend: 135 months in prison.

                                                              Respectfully submitted,

                                                              SHANNON T. HANSON
                                                              Acting United States Attorney

                           By:    */s Briana Knox*
                                                              Briana Knox
                                                                Assistant United States Attorney

Dated: March 18, 2025